UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

PAUL B. DEAL                                                                CIVIL ACTION

VERSUS                                                                       NO. 11-743-JJB-RLB

STATE OF LOUISIANA, THROUGH
DEPARTMENT OF JUSTICE, LOUISIANA
ATTORNEY GENERAL'S OFFICE

RULING ON DEFENDANT'S MOTION TO COMPEL

Before the Court is Defendant's Motion to Compel ("Motion") responses to its Request for Production Nos. 1 – 4, filed on June 18, 2013. (R. Doc. 36). Plaintiff filed an Opposition (R. Doc. 41) to the Motion on July 9, 2013, to which Defendant replied (R. Doc. 42). For the reasons discussed below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.

I.      BACKGROUND

In this action, Plaintiff alleges that Defendant violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1),[1] by terminating him because of his age. (R. Doc. 1-2 at 3).[2] Plaintiff seeks "damages which include, but are not limited to, emotional distress, lost wages and benefits, loss of earning capacity, humiliation and embarrassment, past and future medical expenses" in addition to "liquidated damages pursuant to the ADEA." (R. Doc. 1-2 at 3).

---

[1] The ADEA prohibits discrimination against employees age 40 and older with respect to their terms and conditions of employment. *See, e.g.*, 29 U.S.C. §§ 623(a) (prohibited practices), 631(a) ("Individuals at least 40 years of age."); *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 590-91 (2004) ("the ADEA was concerned to protect a relatively old worker from discrimination that works to the advantage of the relatively young").

[2] Plaintiff asserts an identical claim under the state equivalent of the ADEA — the Louisiana Employment Discrimination Law, La. Rev. Stat. 23:312(A)(1) (prohibiting discrimination on the basis of age). Additionally, Plaintiff alleges that Defendant has a "practice of forcing out older employees under the pretextual charge that 'layoffs' were required," which has a "disparate impact" on older workers in violation of the ADEA. (R. Doc. 1-2 at 3).

Plaintiff submitted the report of his financial expert, Dan M. Cliffe, CPA, on December 3, 2012.  Defendant alleges that "[a]t the time of the submission, there were no attachments or exhibits to the Cliffe report, despite the fact designating that there was an attachment." (R. Doc. 36-1 at 1-2).[3]  The report also failed to indicate what materials, if any, Plaintiff furnished to his experts prior to preparing the report.  (Cliffe Dep., R. Doc. 36-3 at 9).

On March 11, 2013, before the March 15, 2013 expert discovery deadline (R. Doc. 25), Defendant deposed Dan Cliffe. (Cliffe, Dep., R. Doc. 36-3 at 4-18).  During Mr. Cliffe's deposition, he testified that Plaintiff provided him with his "complete tax returns" and W-2 forms for the years 2004 or 2005 through 2009.  Plaintiff also provided verbal forms, which Mr. Cliffe explained were either "verified or not by his tax returns." (R. Doc. 36-3 at 10).  When asked to produce these documents, Cliffe stated they were no longer in his possession because he gave them back to Plaintiff. (Cliffe Dep., R. Doc. 36-3 at 11).

On March 13, 2013 — two days after Mr. Cliffe's deposition — Defendant propounded discovery requesting the materials furnished to Plaintiff's expert and additional financial documents. (R. Doc. 36-3 at 19).  On April 1, 2013, Plaintiff objected to Defendant's Request for Production of Document Nos. 1 – 4 without producing any responsive documents:

**REQUEST FOR PRODUCTION NO. 1:**
Produce a copy of your personal income tax returns, both federal and state, for tax years 2004 through 2012. If you have not filed your taxes for tax year 2012, please provide any and all W-2's, 1099's or other proof of income for tax year 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

---

[3] On January 18, 2012, the Court entered its original Scheduling Order (R. Doc. 6) which required Plaintiff to provide Defendant with his expert report by November 15, 2012.  Nonetheless, Plaintiff submitted his expert report outside of the November 15, 2012 deadline.  Based on Plaintiff's untimely submission, Defendant moved to exclude Plaintiff's financial expert and the expert report. (R. Doc. 18).  The Court denied (R. Doc. 25) Defendant's Motion (R. Doc. 18) and extended the deadline for conducting discovery from experts until March 15, 2013 (R. Doc. 25 at 1).

Objection: To the extent this request is overbroad and calls for documents related to his income other than earned income on his W-2s as not reasonably calculated to lead to the discovery of admissible evidence. Dan Cliffe testified that he only used the W-2 information. Plaintiff provided the entire retainer to Mr. Cliffe, because he did not unstaple the W-2. Plaintiff further states that the State of Louisiana has access to his W-2s while employed with the State. Plaintiff filed joint returns, and thus, those returns contain private and confidential information. Plaintiff further objects to this request to the extent it seeks information prior to his termination from as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to the objection and without waiver of same, Plaintiff can produce W-2s for the last 3 years, should any exist, subject to the entry of a protective order agreed upon by the parties making Plaintiff's financial information confidential except as to the parties and the Court. It will be Defendant's responsibility to obtain said protective order.

**REQUEST FOR PRODUCTION NO. 2:**
Produce a copy of any and all W-2 forms, 1099 forms or other proof of income for tax year 2004 through 2012.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
See Response to Request for Production No. 1.

**REQUEST FOR PRODUCTION NO. 3:**
Produce a copy of any and all documentation provided to your expert witness, Dan Cliffe, by you or your counsel for purposes of forming his expert opinion and/or preparing his expert report.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
Undersigned counsel did not provide Dan Cliffe with any documentation for purposes of forming an expert opinion or preparing an expert report. See Response to Production No. 1. Plaintiff did not provide Dan Cliffe his entire tax return for the purpose of forming an expert opinion. Plaintiff intended to provide his W-2 information, which happened to be stapled to the tax returns.

**REQUEST FOR PRODUCTION NO. 4:**
Produce a copy of any and all documentation utilized by your expert witness, Dan Cliffe, in forming his expert opinion and or/preparing his expert report.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**
Objection: This request asks for information not in the custody and control of the Plaintiff. See Response to Request for Production No. 1.

(R. Doc. 36-3 at 26-28).

On April 2, 2013, Defendant's counsel wrote to Plaintiff's attorney notifying her of the "deficiencies" in the "incomplete responses" and asked that Plaintiff supplement the "responses by Friday, April 5, 2013." (R. Doc. 36-3 at 29).  Plaintiff's counsel responded later that day raising the same objections and also indicating that Mr. Cliffe might be supplementing his expert report. (R. Doc. 36-3 at 32).  After not receiving any supplemental response, on May 1, 2013 Defendant's counsel sent another letter containing a more detailed explanation of the deficiencies in Plaintiff's objections and requesting immediate production of the outstanding documents. (R. Doc. 36-3 at 33).

On May 14, 2013, Plaintiff supplemented his Response to Request for Production No. 3 by raising the same objections, but providing an affidavit prepared by Dan Cliffe:

> **REQUEST FOR PRODUCTION NO. 3:**
> Produce a copy of any and all documentation provided to your expert witness, Dan Cliffe, by you or your counsel for purposes of forming his expert opinion and/or preparing his expert report.
>
> **RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**
> Undersigned counsel did not provide Dan Cliffe with any documentation for purposes of forming an expert opinion or preparing an expert report.  See Response to Production No. 1.  Plaintiff did not provide Dan Cliffe his entire tax return for the purpose of forming an expert opinion.  Plaintiff intended to provide his W-2 information, which happened to be stapled to the tax returns.  Please see attached affidavit per our correspondence regarding the information that Mr. Cliff relied upon in his expert report.  Your recent letter inquired about the affidavit attached.

(R. Doc. 36-3 at 37).  Mr. Cliffe's sworn affidavit gave information about the documents provided to and relied upon by him in forming his expert opinion:

> I was given Mr. Deal's 2004 or 2005 through 2009 tax returns.  However, I only relied upon the W-2 forms in formulating my opinion and report.  The W-2s were stapled to the full tax return.  I returned the tax documents to Mr. Deal after I completed my report.

(Cliffe Aff., R. Doc. 36-1 at 39).

After receiving Plaintiff's Supplemental and Amending Answers, Defendant's counsel made a final request for the immediate production of the documents on May 17, 2013. (R. Doc. 36-3 at 41). In her letter, Counsel for Defendant "observed that, aside from the inclusion of Dan Cliffe's affidavit, the single supplemental and amending discovery response is no more responsive to the discovery requests propounded than the previous responses." (R. Doc. 36-3 at 41). Plaintiff responded on May 20, 2013 to inform Defendant that his "responses to your Request for Production of Documents Nos. 1, 2, 3 and 4 remain the same." (R. Doc. 36-3 at 42).

Following Plaintiff's final objection, Defendant moved the Court to compel responses to its Request for Production of Documents Nos. 1 – 4. (R. Doc. 36). Additionally, Defendant requests attorney's fees pursuant to Rule 37 for the costs associated with the Motion to Compel. (R. Doc. 36-1 at 8).

## II.   ARGUMENTS OF THE PARTIES

In its Motion to Compel, Defendant argues it is "entitled to discovery of plaintiff's complete income tax returns, including W-2 forms for tax years 2004 – 2012 without a protective order, as Plaintiff has placed his income and earning capacity at issue by the filing of this suit." (R. Doc. 36-1 at 7). Defendant further suggests that Plaintiff has "placed these documents at issue by providing them to expert witness Dan Cliffe for purposes of forming his expert opinion and/or preparing his expert report." (R. Doc. 36-1 at 7). It is Defendant's contention that Rule 26(a)(2)(B)(ii) of the Federal Rules of Civil Procedure entitled it to production of any materials furnished to Mr. Cliff, regardless of whether "he ultimately relied on" those materials. (R. Doc. 36-1 at 9-10).

In response, Plaintiff first contends that Defendant's Request for Production of Documents Nos. 1 – 4 is actually an attempt by Defendant "to improperly use the expert

5

discovery period to conduct fact discovery." (R. Doc. 41 at 1). For that reason, Plaintiff argues the discovery requests "**were propounded after the** [fact] **discovery deadline of January 15, 2013, and are, thus, late.**" (R. Doc. 41 at 1). Beyond untimeliness, the crux of Plaintiff's argument is that his complete tax returns are not discoverable because Mr. Cliffe "only relied upon the Plaintiff's W-2 information, which is only part of Plaintiff's tax return," despite "the full return" being "furnished to Mr. Cliffe." (R. Doc. 41 at 1). Plaintiff also contends that it is Defendant's responsibility, not his, to move the Court for any protective order.

### III. DISCUSSION

The question before the Court is whether Plaintiff should be compelled to produce his and his wife's jointly filed tax returns between 2004 and 2012, pursuant to Defendant's discovery request. Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (A relevant discovery request seeks information that is "either admissible is reasonably calculated to lead to the discovery of admissible evidence.") (quoting Fed. R. Civ. P. 26(b)(1)). Nonetheless, a party may discover otherwise privileged information where the privilege-holding opponent has placed the information at issue or furnished the information to a testifying expert for consideration in forming the expert's opinion. *See, e.g.*, *Butler v. Exxon Mobil Refining & Supply Co.*, No. 07-386, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) ("tax return information is relevant where a plaintiff has placed the subject of his income/earning capacity at issue in litigation"); *Estate of Manship v. U.S.*, 236 F.R.D. 291, 295 (M.D. La. 2006) ("testifying experts . . . must produce not only their written valuation reports but also the materials that they 'considered' in forming their valuation opinions, regardless of when those

materials were received, generated, reviewed and/or used"), *vacated in part by* 237 F.R.D. 141 (M.D. La. 2006) (vacating award of attorney's fees as an unfair sanction).

Therefore, if Plaintiff's expert "considered" Plaintiff's complete tax returns for the years 2004 – 2009, or any other financial information, Plaintiff cannot withhold those documents on the basis of privilege. Likewise, any documents "considered" by Plaintiff's expert cannot be characterized as "fact discovery" considering Rule 26(a)(2)(B)(ii) requires their production as part of the expert report and negates any need to formally request those documents in discovery. On the other hand, if any of the responsive documents were neither considered by Plaintiff's expert nor formally requested before the October 13, 2012 fact discovery deadline, any request for production of those documents would be untimely, as Plaintiff argues.

### A.     Request for Production Nos. 3-4

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure generally requires all testifying experts to provide a "written report." The report must include "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii).[4]

Discussing the "considered" materials which must accompany the report, the Advisory Committee Note to the 1993 amendment to Rule 26 explains:

> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether

---

[4] Additionally, the report must contain:

    (iii)    any exhibits that will be used to summarize or support them;
    (iv)    the witness's qualifications, including a list of all publications authored in the previous 10 years;
    (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
    (vi)    a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(iii)-(vi).

> or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

Based on this note, courts have consistently required disclosure of all the materials provided to testifying experts — including information protected by the attorney client privilege and work product doctrine[5] — without consideration of the expert's actual reliance on any particular information. *See, e.g.*, *Estate of Manship*, 236 F.R.D. at 295 n.2 ("commentary indicates that Rule 26(a)(2)(B) exceeds the more narrow definition of relied upon, referring instead to any information furnished to a testifying expert that such expert . . . even if such information is ultimately rejected"); *TV-3 Inc. v. Royal Ins. Co. of America*, 193 F.R.D. 490, 492 (S.D. Miss. 2000) ("We further interpret the word 'considered' . . . to encompass . . . all documents . . . reviewed by the experts in connection with the formulation of their opinions, but ultimately rejected or not relied upon."); *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) ("A testifying expert must disclose and therefore retain whatever materials are given him . . . even if in the end he does not rely on them . . . , because such materials often contain effective ammunition for cross-examination.").

In 2010, the Supreme Court amended Rule 26 to require disclosure of the "facts or data considered" by the expert, as opposed to "data and other information," as required by the 1993 version. Plaintiff argues the 2010 amendment altered the 1993 definition of "considered" and suggests that the 1993 Committee Note is no longer applicable or instructive. Plaintiff, however, incorrectly interprets the amendment's effect on the definition of "considered;" the 2010 amendment has no bearing on the definition of "considered" as it existed in 1993. Instead, the "refocus of disclosure on 'facts or data' is meant to limit disclosure . . . by excluding theories or

---

[5] Certain materials subject to the attorney client privilege and/or work product doctrine may no longer be discoverable after the 2010 amendment to Rule 26. *See infra* notes 6–7 and accompanying text.

mental impressions of counsel."[6] With that exception, the required disclosure of factual materials furnished to the expert remains the same:

> [T]he intention is that "facts or data" be interpreted broadly . . . The disclosure obligation extends to any facts or data "considered" by the expert . . . , not only those relied upon by the expert.

Committee Note to 2010 amendment of Rule 26.[7]

Here, neither party disputes that Plaintiff furnished his complete, un-redacted tax returns for the years 2004 – 2009 to his expert.[8] Even though Plaintiff and Mr. Cliffe claim that these returns were not "relied" upon by Mr. Cliffe, that is insufficient to protect them from disclosure. In addition, even that is controverted by his deposition testimony — "What he told me was verified or not verified by his tax returns . . . I relied upon his tax returns rather than his memory of what he may have earned in – particularly in the year 2008." (Cliffe Dep., R. Doc. 36-3 at 10). The Court is not persuaded by Plaintiff's attempt to draw a line between the content of the W-2s and whether that information was incorporated into the actual tax returns, and then considered and relied upon by Mr. Cliffe as he specifically testified.

Under Rule 26(a)(2)(B), Plaintiff was required to produce the complete tax returns furnished to Mr. Cliffe, along with his expert report, as of December 3, 2013 — the day he

---

[6] Committee Note to 2010 amendment of Rule 26 (The amendment is intended "to alter the outcome in cases . . . requiring disclosure of all attorney-expert communications and draft reports. The amendments to Rule 26(b)(4) make this change explicit by providing work-product protection against discovery regarding draft reports and disclosures or attorney-expert communications.").

[7] *See also Fialkowski v. Perry*, No. 11-5139, 2012 WL 2527020, at *3 (E.D. Pa. June 29, 2012) ("The 2010 Amendments did not alter the definition of 'considered.' Thus required disclosures . . . still include any information furnished to a testifying expert . . . even if such information is ultimately rejected."); *Yeda Research & Dev. Co., Ltd. v. Abbott GmbH & Co. KG*, No. 10-1836, — F.R.D. —, 2013 WL 2995924, at *7-8 (D.D.C. June 7, 2013) (After the 2010 amendment attorneys' 'theories or mental impressions' *are* protected, but everything else is fair game. . . . Because the word 'considered' is unchanged, cases interpreting its meaning remain valid").

[8] The record does not indicate that Dan Cliffe was provided with any facts or data containing the theories or mental impressions of counsel. Nonetheless, Defendant clarifies that it does not seek "production of communications between the expert and plaintiff or plaintiff's counsel, but merely the underlying data and documents containing the factual material." (R. Doc. 36-1 at 10).

provided his expert report to Defendant. Despite this requirement, Plaintiff's expert report did not contain any "facts or data considered" by Cliffe — not even Plaintiff's W-2 forms. Plaintiff has given no reason to the Court for the deficiencies of his expert report.

Defendant diligently attempted to obtain the documents it was entitled to in early December, to no avail. The discovery sought by Defendant is part of Plaintiff's expert disclosure requirements.[9] Therefore, Plaintiff is ordered to produce to Defendant all documentation provided to Dan Cliffe, including the complete tax returns for the years 2004 – 2009, in response to Defendant's Request for Production Nos. 3 – 4.

### B.     Request for Production Nos. 1 – 2

In addition to the documents furnished to Cliffe, Defendant seeks Plaintiff's complete tax returns, along with his W-2 and 1099 forms and any other proof of income between 2004 and 2012. The 2004 – 2009 tax returns and financial documents requested are identical to those furnished to Plaintiff's expert and do not require any additional analysis, as Plaintiff has been ordered to produce those documents. The parties have not represented that Plaintiff's expert was furnished any financial documents beyond 2009. To the extent Plaintiff's 2010 – 2012 tax returns and financial documents were not "considered" by Plaintiff's expert, they fall outside of the expert disclosure requirements of Rule 26(a)(2)(B) and constitute fact, not expert, discovery.

The Court has extended the discovery deadlines three times since issuing its original Scheduling Order on January 18, 2012. (R. Docs. 9, 12, 25). The deadline for completing fact discovery and filing any discovery-related motions was originally June 15, 2012. (R. Doc. 6). The Court later granted (R. Doc. 9) Plaintiff's motion for a 60 day extension (R. Doc. 8).

---

[9] For this reason, as well as the potential for uncertainty between Record Document 25 and the subsequent docket entry resetting the deadlines for expert discovery, the Court finds that Defendant's expert discovery requests were timely.

10

Subsequently, the deadline was extended for a second time to October 13, 2012 (R. Doc. 12), at Defendant's request (R. Doc. 10).  After this last extension, the Court explained that "[n]o further extensions shall be granted except under extreme circumstances and for good cause shown." (R. Doc. 12).

Defendant does not indicate that it formally sought production of Plaintiff's 2010 – 2012 tax returns and financial documents prior to March 13, 2013 — the date of the disputed discovery request.  Despite obtaining numerous extensions, Defendant failed to request production of the 2010 – 2012 documents within the October 13, 2012 deadline.  Defendant offers no explanation to the Court.  It has made no showing of "good cause" to justify a modification of the discovery deadline (R. Doc. 12). *See also* Fed. R. Civ. P. 16(b)(4).  Therefore, the Court finds Defendant's discovery Request for Production Nos. 1 – 2 and Defendant's Motion to Compel untimely, as it relates to documents not furnished to Plaintiff's expert.  *See, e.g., Vann v. Gilbert*, 482 Fed. Appx. 876, 878-79 (5th Cir. 2012) (district court did not abuse its discretion in denying plaintiff's motion to compel filed after the close of discovery, where deadline had already been extended and plaintiff offered no explanation for not timely requesting discovery); *Curry v. Strain*, 262 Fed. Appx. 650, 652 (5th Cir. 2008) (citing plaintiff's "unexplained delay in seeking the court's assistance in compelling discovery" as a ground for denying plaintiff's motion to compel).[10]  Therefore**,** Defendant's Motion to Compel production

---

[10] The Court does note that Plaintiff's failure to produce these 2010 – 2012 financial documents may preclude him from introducing them into evidence at trial to prove damages. *See, e.g.,* Fed. R. Civ. P. 26(a)(1)(A)(iii) (initial disclosures must include "a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents . . ., unless privileged or protected from disclosure, on which each computation is based"); *Butler*, 2008 WL 4059867, at *2 (financial documents showing plaintiff's income were relevant in employment discrimination claim seeking "past and future lost wages and benefits and damages for loss of earning capacity"); *Gattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 74 (D. Conn. 2001) (employment discrimination plaintiff's W-2 and 1099 forms were relevant to damages for back pay and front pay).

of documents requested in Request for Production Nos. 1 – 2 is denied as to any documents not furnished to Dan Cliffe and/or not responsive to Request for Production Nos. 3 – 4.

### C.  Protective Order

Plaintiff contends that Defendant is responsible for moving the Court to issue a protective order to prevent the dissemination of these sensitive documents.  The Court does not agree. Making a claim of privilege "does not act as a bar to discovery and is generally not grounds to withhold documents from discovery, such confidentiality concerns may be addressed with an appropriate protective order" filed by the party resisting discovery. *Bramell v. Aspen Exploration, Inc.*, No. 05-384, 2008 WL 4425368, at *4 (E.D. Tex. Sept. 24, 2008).  This concept is made clear by Rule 26(b)(5) of the Federal Rules of Civil Procedure, which explains that the party "from whom discovery is sought may move for a protective order."

The Court therefore determines it is Plaintiff's responsibility to move the Court for a protective order if he has concerns regarding the sensitive nature of the financial documents furnished to Dan Cliffe or otherwise responsive to Request for Production Nos. 3 – 4.   For that reason, Plaintiff may move for a protective order relating to the disclosure and handling of those documents.  Any proposed protective order may be mutually agreed upon by the parties or submitted by Plaintiff after conferring or attempting to confer with Defendant on the terms of such an order, as required by Rule 26(c)(1).

### D.  Expenses

Under Rule 37(a)(5)(C), if a motion to compel discovery is granted in part and denied in part, the court may apportion the reasonable expenses for the motion.   Because the Court has found that the Motion to Compel was justified for two out of the four discovery requests, the Court finds that the parties shall each bear their own costs in connection with the Motion.

IV.   CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that Defendant's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**:

- Defendant's Motion to Compel responses to **Request for Production Nos. 3 – 4** is **GRANTED**. As set forth in this Order, Plaintiff will produce all documents responsive to Request for Production Nos. 3 – 4, in the same form and state in which they were provided to Dan Cliff, **by September 11, 2013**.

- Defendant's Motion to Compel responses to **Request for Production Nos. 1 – 2** is **DENIED** as to all documents not responsive to Request for Production Nos. 3 – 4.

- Plaintiff may move for a **protective order** relating to the disclosure and handling of any documents encompassed by Request for Production Nos. 3 – 4 and/or produced in accordance with this Order, **by Friday, September 6, 2013**. Any proposed protective order may be mutually agreed upon by the parties or submitted by Plaintiff after conferring or attempting to confer with Defendant on the terms of such an order, as required by Rule 26(c)(1).

- Defendant's request for attorney's fees associated with its Motion to Compel is **DENIED**. Each party **shall bear their own costs**.

Signed in Baton Rouge, Louisiana, on August 28, 2013.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE